**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

       *Plaintiff*,

  v.

DANIEL JENKINS,

       *Defendant*.

Crim. No. 13-646

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court by way of Defendant Daniel Jenkins' motion to modify his sentence and for immediate compassionate release. D.E. 81, 91.[1] Defendant also filed two supplements, D.E. 93, 94, and a motion for the appointment of counsel, D.E. 100. The Government filed opposition, D.E. 101, to which Defendant replied, D.E. 103. The Court reviewed the parties' submissions[2] and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). Defendant seeks immediate release due to the ongoing COVID-19 pandemic as well as a recent Third Circuit decision as to career offender designation. For the

---

[1] Defendant made an earlier motion, D.E. 81, but then withdrew it, D.E. 84. The Court refers to D.E. 81 as Plaintiff's initial brief because D.E. 91 merely requests that the Court reinstate the motion under D.E. 81.

[2] Defendant's brief in support of his motion is referred to as "Br." (D.E. 81); his first supplemental submission is referred to as "Supp." (D.E. 93); his second supplemental submission is referred to as "Supp. 2d" (D.E. 94); the Government's opposition brief is referred to as "Opp." (D.E. 101); and Defendant's reply letter brief is referred to as "Reply" (D.E. 103).

following reasons, Defendant's motion for compassionate release is denied, as is his motion for appointment of counsel.

I.     BACKGROUND

   A. Underlying Criminal Proceedings

Jenkins was indicted for a conspiracy to distribute, and possess with the intent to distribute, phencyclidine ("PCP") and heroin in violation of 21 U.S.C. § 846. The indictment stemmed from an investigation in which Jenkins sold an undercover officer either PCP, heroin, or both on approximately eight occasions between May 31, 2012 and September 10, 2012. PSR ¶¶ 6-15. On October 29, 2013, he pled guilty before Judge Walls. The probation department determined that Jenkins qualified as a career offender, resulting in a United States Sentencing Guidelines' range of 188 to 235 months based on a Guidelines' level of 31 and a Criminal History Category of VI. PSR ¶¶ 38, 150. The Government agreed with the calculation.

Judge Walls sentenced Defendant on March 11, 2014. D.E. 65. Defendant argued that he should be sentenced based on a total offense level of 23 and a Criminal History Category of V, resulting in a range of 84 to 105 months. 3/11/2014 Tr. at 2, 22. Judge Walls first reviewed Jenkins' criminal history without considering any juvenile adjudications. *Id.* at 3-9. Defendant argued that his criminal history was overstated, *id.* at 11, but the Court rejected Defendant's argument, *id.* at 29, 35. Among other things, Judge Walls noted that Defendant had been given numerous lenient sentences in the past but continued to reoffend. *Id.* at 12, 17, 31, 34. Judge Walls also noted that the amount of PCP was significant enough to trigger a five-year mandatory minimum sentence and commented on the scourge of illicit drug distribution. *Id.* at 14-15, 27, 29, 35. Judge Walls sentenced Jenkins' to a term of 188 months followed by 5 years of supervised release. D.E. 66.

When he filed the current motion, Jenkins was in Berlin FCI. He is currently housed at McKean FCI in Pennsylvania. He is scheduled to be released on March 26, 2026.

### B. COVID-19 Pandemic

COVID-19 "is caused by the virus severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), a new virus in humans causing respiratory illness which can be spread from person-to-person." *COVID-19*, "COVID-19 Overview and Infection Prevention and Control Priorities in non-US Healthcare Settings," Centers for Disease Control and Prevention (Feb. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/hcp/non-us-settings/overview/index.html#background. "COVID-19 is primarily transmitted from person-to-person through respiratory droplets. These droplets are released when someone with COVID-19 sneezes, coughs, or talks." *Id.* Persons who contract the virus reflect a wide range of symptoms from asymptomatic to mild (including fever, cough, nausea, chest pain, and body pain) to severe to critical (including respiratory failure and death). *Id.* As a result, standard precautions to prevent the spread of the virus include social distancing, proper hygiene, personal protective equipment (including use of a face mask), and maintenance of clean surfaces and devices. *Id.*

Numerous factors can increase a person's risk of severe illness if he/she contracts the virus. As a person get older, his/her risk for severe illness from COVID-19 increases. *COVID-19,* "Older Adults," Centers for Disease Control and Prevention (May 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. For example, persons in their sixties and seventies are at a higher risk of severe illness than people in their fifties. *Id.* Those 85 or older are at greatest risk. *Id.* Adults 65 or older comprise 8 out of 10 COVID-19 deaths in the United States. *Id.* The following medical conditions put a person at increased risk of severe illness from COVID-19: cancer, chronic kidney diseases, chronic lung

diseases (including asthma if it is moderate to severe), dementia or other neurological conditions, heart conditions such as coronary artery disease, weakened immune system from organ transplant, obesity, pregnancy, sickle cell disease, smoking, stroke or cerebrovascular disease, and type 2 diabetes mellitus. *COVID-19*, "People with Certain Medical Conditions," Centers for Disease Control and Prevention (May 13, 2021),[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

As of December 7, 2021, the United States has had 49,198,746 COVID-19 cases, resulting in 787,064 deaths. *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited December 7, 2021).

### C. Federal Bureau of Prisons

The Federal Bureau of Prisons ("BOP") has taken the following steps to combat the virus. On March 13, 2020, the BOP modified its operations in accordance with its "COVID-19 Action Plan." *Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Initially, all social visits, inmate movement, and official staff travel were suspended for thirty days. *Id.* Contractors who enter any BOP facility are screened for the virus and, initially, admission was limited to contractors who performed essential services. *Id.* The BOP also conducts enhanced health screenings for staff in areas of "sustained community transmission." *Id.* The BOP screens all new inmates for virus "exposure risk factors and symptoms." *Id.* Any new inmate who is asymptomatic but has had a risk of exposure is quarantined. *Id.* According to the Government, the quarantine period is for a

---

[3] The CDC previously provided two separate lists, one listing conditions that entailed a greater risk of severe illness and one setting forth conditions that might involve a greater risk.

4

minimum of 14 days or until cleared by medical staff.  Opp. at 4.  The Government indicates that new inmates who are symptomatic are placed in isolation until they test negative for the virus or are cleared by medical staff.  *Id.* at 5. The Government also states that the BOP has taken the following steps to prevent the spread of the virus:  group gatherings are limited to permit social distancing as much as possible, all staff and inmates have been issued face masks, and all staff and inmates are strongly encouraged to wear face masks when social distancing cannot be achieved.  *Id.*

The BOP also has a COVID-19 vaccination plan.  *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Mar. 11, 2021), https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf.  Inmates fall into different priority levels for vaccination:  Priority Level 1 (for inmates in certain high priority jobs, including health service unit assignments); Priority Level 2 (inmates who are 65 or older or who are, according to CDC criteria, at an increased risk for severe illness from the virus); Priority Level 3 (inmates who are aged 50 through 64 or who might be, according to CDC criteria, at an increased risk for severe illness from the virus); and Priority Level 4 (all other inmates).  *Id.*  As of December 7, 2021, the BOP had administered 263,492 doses of vaccine.  *COVID-19*, "Vaccine Implementation," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited December 7, 2021).

The BOP COVID-19 current statistics are as follows:  (1) 254 inmates and 220 staff presently have confirmed positive tests; (2) 41,921 inmates and 8,569 staff have recovered; and (3) 271 inmates and 7 staff have died.  *Id.*  McKean FCI, where Defendant is housed, currently reports 2 inmate and 13 staff cases.  *Id.*  In addition, 414 inmates and 3 staff have recovered, and one inmate has died.

### D. The Parties' Arguments

Jenkins initially sought release due to the pandemic. Jenkins asserted that he should be released due to his medical conditions (asthma and diabetes), the level of medical care available, and the COVID-19 outbreak at Berlin FCI. Br. at 1. Defendant added that he had only incurred one disciplinary infraction while completing numerous programs pertaining to job skills, parenting, and criminal justice. *Id.* at 2. In his first supplement, Jenkins again pointed to the number of positive cases at Berlin FCI and raised a new argument. Defendant asserted that his conspiracy conviction should not have been the basis for a career offender finding in light of *United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019). Supp. at 1-2. In his next supplemental filing, Jenkins indicated that in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (en banc),[4] the Third Circuit also found that his conspiracy offense could not support a career offender finding. Supp. 2d at 1.

In opposition, the Government asserts that Defendant has pre-diabetes and that his asthma is well-controlled. Opp. at 2, 10-11 (citing to Ex. C, Defendant's medical records). The Government explains that pre-diabetes has not been identified as an increased factor. *Id.* The Government continues that Jenkins was offered the vaccine on April 7, 2021 and refused. *Id.* at 2, 12. The Government notes that after refusing the vaccine, Defendant contracted COVID-19, was asymptomatic, and fully recovered. *Id.* at 2, 13 (citing to Ex. C). Finally, the Government asserts that the statute for compassionate release does not permit Defendant's release based on the *Nasir* and that 18 U.S.C. § 3553(a) does not support release. *Id.* at 1.

---

[4] The United States Supreme Court subsequently vacated the judgment in *Nasir* and remanded the matter. *United States v. Nasir*, -- U.S. --, 2021 WL 4507560 (2021). The remand, however, appears to be based on an unrelated issue.

On August 19, 2020, Jenkins wrote to the Warden of Berlin FCI, seeking compassionate release. Br. at Ex. A. The Warden denied the request on August 24, 2020. *Id.*

**II.     LEGAL STANDARD**

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

(c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—

   (1) in any case—

      (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if it finds that—

         (i) *extraordinary and compelling reasons warrant such a reduction*; or

         (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and *a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)*;

         *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and

      (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and

   (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction

7

>is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).  The parties agree that Defendant has satisfied the exhaustion requirement.  Opp. at 9.  The Court notes that while Jenkins appears to have exhausted his administrative remedies as to his pandemic arguments, it is not clear that he has done so as to his career offender claim.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13.  U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) ("U.S. Sentencing Guidelines Manual").  The application notes to the section provide four circumstances that can be considered extraordinary and compelling:  (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons.  *Id.* cmt. n. 1(A)-(D).  The Government argues that the policy statement is binding on the Court in resolving the current motion.  Opp. at 8 n.5.  In *United States v. Andrews*, 12 F.4th 255, 259-60 (3d Cir. 2021)-decided after the Government submitted its brief- the Third Circuit found that the policy statement was not binding on courts but nevertheless found that the statement could provide useful guidance.

Pursuant to Section 3582(c)(1)(A), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).  They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses by Defendant.  *Id.*

8

### III. ANALYSIS

Turning first to Jenkins' arguments concerning the pandemic, his asthma potentially increases his risk of suffering an adverse outcome should he contract the virus. This factor weighs in favor of Defendant's request.

However, the Court finds that Defendant has not met his burden as to extraordinary and compelling circumstance for the following reasons. First, Jenkins declined to be vaccinated. As a result, this Court joins the numerous other courts who have found that such a decision demonstrates that a defendant has voluntarily foregone an opportunity for self-care offered by the BOP. *See, e.g.*, *United States v. Baeza-Vargas*, No. Cr-10-00448, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) (listing more than a dozen decisions reaching the same result). Defendant has not provided any medical reason for refusing (to the contrary, based on his asthma, he has an additional medical reason to receive the vaccine); he simply refused. *See United States v. Jackson*, No. 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021). Defendant is within his rights to refuse the vaccine, but any corresponding argument that he must be released because of potential complications were he to contract the virus rings hollow. *United States v. Jackson*, No. 15-cr-260(7), 2021 WL 806366, at *1-2 (D. Minn. Mar. 3, 2021).

Second, McKean FCI currently has a relatively low number of COVID-19 infections, and the vast majority of inmates have been vaccinated. Third, Jenkins' asthma is well-controlled, and his prediabetic condition is not listed as a risk factor by the CDC. Finally, Defendant was asymptomatic when he contracted COVID-19 and has fully recovered.

The Court also agrees with the Government that the Section 3553(a) factors militate against release. Jenkins has taken numerous programs at the BOP, which favor his request. At the same time, even without the career offender enhancement, Defendant still qualified for a Criminal

History Category of V, which reflects a serious criminal history.  Finally, Defendant engaged in numerous direct distributions of PCP and/or heroin in this matter.

As to Defendant's argument that he should be released due to the *Nasir* decision, it does not appear that such relief can be granted pursuant to 18 U.S.C. § 3582(c)(1)(A).  In *Nasir*, the Third Circuit ruled that "we conclude that inchoate crimes are not included in the definition of 'controlled substance offenses' given in section 4B1.2(b) of the sentencing guidelines."  982 F.3d at 160.[5]  Here, Defendant was convicted of an inchoate offense, conspiracy.  As a result, under *Nasir*, he would not qualify as a career offender.

*Nasir* concerned an interpretation of the Guidelines, not a statute.  The difference can be significant.  For example, in *Johnson v. United States*, 576 U.S. 591, 606 (2015), the United States Supreme Court found the residual clause in the Armed Career Criminal Act of 1984 to be unconstitutionally vague.  But in *Beckles v. United States*, -- U.S. --, 137 S. Ct. 886, 897 (2017), the Supreme Court found that an identically worded residual clause of Section 4B1.1(a) of the Guidelines was not subject to vagueness challenges under the Due Process Clause of the Fifth Amendment.  The *Beckles* Court explained that "[b]ecause they merely guide the district court's discretion, the Guidelines are not amenable to a vagueness challenge."  *Id.*  at 894.

In *United States v. Jarvis*, 999 F.3d 442, 443-46 (6th Cir. 2021), the Sixth Circuit ruled that, as a matter of law, a non-retroactive change to 18 U.S.C § 924(c) could not be an "extraordinary and compelling" reason under Section 3582(c)(1)(A)(i).  Similarly, in *Andrews* the Third Circuit concluded that the "nonretroactive changes to the § 924(c) mandatory minimums also cannot be a basis for compassionate release. . . .  [W]e will not construe Congress's

---

[5] The relevant Sentencing Guidelines, Sections 4B1.1(a) and 4B.2(b), were the same at the time of Defendant's sentencing.

nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release." *Andrews*, 12 F.4th at 261.

Because a nonretroactive change in a statute cannot be an extraordinary and compelling reason to justify release, a nonretroactive interpretation of a Guideline provision also cannot justify release under Section 3582(c)(1)(A)(i). In light of this conclusion, Defendant's motion for appointment of counsel is also denied.

### IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motions. An appropriate Order accompanies this Opinion.

Dated: December 9, 2021

John Michael Vazquez, U.S.D.J.